No. 19,052.

THE STATE OF KANSAS, ex rel. JOHN S. DAWSON, as Attorney-general, etc., *Plaintiff*, v. HENRY JOHNSON et al., as the Board of County Commissioners of the County of Haskell, *Defendants*.

SYLLABUS BY THE COURT.

HIGH SCHOOL — *Petition for Tax Levy Granted — Levy Made — County Commissioners No Power to Rescind Levy.* Under the provisions of chapter 263 of the Laws of 1911 a petition signed by 190 of the school electors of a county having a population of less than 1000 was presented to the county superintendent and board of county commissioners, asking that aid be voted to maintain a high school in the county. The county superintendent and the board decided to provide the aid petitioned for, and thereupon, at the same meeting, in August, 1912, the county board levied a tax sufficient to raise the amount necessary. At the October meeting of the county board a resolution was passed rescinding the levy. *Held:*

(*a*) It was not necessary for the petition to state that the petitioners constituted a majority of the school electors of the county. The presumption obtains that the officers proceeded regularly and satisfied themselves that the petition was signed by a majority.

(*b*) The power to allow the petition does not rest alone with the commissioners. They act with the county superintendent in deciding whether to provide the aid petitioned for, and their action in this instance was a recognition of the school as one entitled to county aid.

(*c*) When the superintendent and commissioners decide to provide the aid petitioned for, the county board has no discretion but must levy a tax sufficient to raise the amount required.

61 —92 KAN.

(*d*) The subsequent action of the board of commissioners acting alone in rescinding the tax levy was without authority and void.

(*e*) At the August meeting of the board, in 1913, the county superintendent having filed with the county treasurer and the board a certificate that a levy of one-half mill was necessary to aid the high school for the ensuing year, it became the duty of the board to make such levy.

(*f*) The act of 1911 was intended to authorize the granting of aid to a school district or districts for the maintenance therein of a high school, and makes no requirement as to the character of the school previous to the granting of the aid.

Original proceeding in mandamus. Opinion filed July 7, 1914. Writ allowed.

*T. W. Marshall*, and *H. W. Stubbs*, both of New Ulysses, for the plaintiff.

*Edgar Foster*, and *Edgar Roberts*, both of Garden City, for the defendants.

The opinion of the court was delivered by

PORTER, J.: This is an original proceeding in mandamus to compel defendants as county commissioners to levy a tax for the purpose of maintaining a high school at Santa Fe, the county seat of Haskell county. On the 5th day of August, 1912, a petition signed by 190 persons, school electors of the county, was presented to the county superintendent and the county board, asking them to make a levy for the maintenance of a county high school at Santa Fe. The county has a population of less than 3000, and the proceedings were under chapter 263 of the Laws of 1911. On the same day the superintendent and the board considered the petition and granted it, and the board ordered a levy of one-half mill for the maintenance of the school. On the 4th day of August, 1913, the county superintendent filed with the county treasurer and the board of county commissioners a certificate that a levy of one-half mill was necessary to aid the high school for the ensuing year. On the same date the board refused to make the levy.

The alternative writ issued on the 22d day of September, 1913. The return denies that the petition filed with the county board on the 5th of August, 1912, was signed by a majority of the school electors, and denies that there is or ever has been any high school established or maintained at Santa Fe, or at any other place in the county. It alleges that at a regular meeting of the county board on October 7, 1912, the previous action levying a tax for the maintenance of the high school at Santa Fe was rescinded. It is also claimed that the provisions of chapter 263 of the Laws of 1911 have never been complied with; that proper certificates have not been filed by the county superintendent, as provided for in the act; that no report was ever made by any principal of any high school at Santa Fe showing the total enrollment at the school or the number of months attended by any pupil.

As a further defense it is alleged that during the summer of 1912 a railroad was constructed in an easterly and westerly direction across the county, about seven miles south of Santa Fe, the county seat, and that Sublette, a new town on the railroad, has since been built, and that most of the inhabitants of the county seat have moved from Santa Fe to Sublette, or to other towns on the line of railroad; and it is alleged that there are now in Santa Fe only the courthouse, the schoolhouse, one or two dwellings, a real estate office, a printing office, and a grocery store carried on in a room of the courthouse. It is alleged there are not at this time more than twenty people living within the limits of the former city of Santa Fe; that school district No. 23, in which it is claimed by the plaintiffs that the high school is located, is about eight miles long and seven miles wide and contains from fifteen to twenty children of school age, only five of whom are eligible to high school admission; that the population of the county is about 1000; that only about fifteen persons in the county are eligible for entrance to the high school, and that if a high school is established or main-

tained in Santa Fe the average attendance would only be from five to ten pupils.

Chapter 263 of the Laws of 1911 provides for county aid to high schools in counties having a population of less than 10,000, and the act authorizes the county superintendent and county commissioners of such counties to make provision for aid to high schools and to provide for the support of the same. Section 4 of the act provides that such high schools when aided shall be under the supervision and control of the county superintendent and district board of the district or city where the school is located. Section 5 declares that no high school shall be eligible for aid under the act except upon a petition to the county superintendent and county commissioners, signed by a majority of the school electors of the county, with the further provision that in counties having a population of less than 3000 "one school only shall be aided, and that one located at the county seat of such county."

The petition for granting aid to the school did not state that the petitioners constituted a majority of the school electors of the county, but this is not required by the statute. (*City of Argentine v. Simmons,* 54 Kan. 699, 700, 39 Pac. 181.) There is the presumption that the officers proceeded regularly and satisfied themselves in this instance that the petition was signed by a majority. (*City of Argentine v. Simmons,* supra.) A great deal of evidence has been taken, but no attempt is made by the defendants to show that the petition was not signed by a sufficient number. The power to allow the petition does not rest alone with the commissioners. They act with the county superintendent in passing upon it; and their action in this instance was a recognition of the high school as a school entitled to have county aid. The subsequent action of the board of county commissioners in rescinding the tax levy was without authority and void. Section 10 of the act provides that if upon presentation of the petition the county superintendent and commissioners decide to

provide the aid petitioned for, the board shall, at the regular meeting held by it on the first Monday in August, levy such tax sufficient to raise the amount necessary. This the board did on the first Monday in August, 1912. It was obliged to do so under the provisions of section 10. It had no discretion, and it could not thereafter rescind the levy. Of course it could not rescind the order allowing the petition, which the statute provided was to be made, if made at all, by the county superintendent and the board acting together. We are not concerned with the action of the board in 1912 further than to hold that it was a recognition of the high school sufficient thereafter to devolve upon the commissioners the duty of levying an annual tax sufficient to raise the amount of money necessary according to the certificate filed by the county superintendent with the board. Section 11 of the act makes it the duty of the county superintendent to certify to the commissioners, and also to the county treasurer, on or before the first day of July in each year, the amount of money necessary to aid districts maintaining high schools under the provisions of this act.

The statute provides that after aid is secured the high school shall maintain certain standards, but manifestly these provisions have nothing to do with the power of the county superintendent and the board to vote the aid in the first instance. It is not contended by the plaintiff that there was a regularly established county high school prior to the action of the board in August, 1912; but it is contended, and the evidence shows, that a high school had been maintained in connection with the regular district school during the years 1911 and 1912. The Barnes law provides that before a high school shall be eligible to aid it shall have been maintained for the preceding school year. The act of 1911 was intended to authorize the granting of aid to a school district or districts for the maintenance therein of a high school located in counties of this class at the county seat, and the act makes no requirement as to the

character of the school previous to the granting of the aid. It appears, however, from the evidence, that during 1911 and 1912 high-school studies were taught in this school to students regularly enrolled, and that the work of the high school was recognized by other high schools in the admission of students.

The fact that there are few people residing on the town site at the county seat furnishes no excuse for defendants' failure to perform their duty. The school is a county high school, and while it is required to be located at the county seat, it is for the benefit of the whole county, and there is no requirement in the statute as to the population of the county seat. The attendance at the high school in 1912 and 1913, according to the evidence, ran down to as low as four students, but, as suggested, it may have been affected by the refusal of the board to comply with its duty and furnish the aid. The testimony of some of the witnesses, including that of the county superintendent, is to the effect that there would probably be an attendance of twenty students and possibly more if the aid were granted and the school properly maintained.

There are some technical objections to the report the principal of the high school filed with the county superintendent, which is required by section 9 of chapter 263 of the Laws of 1911, on the ground that it does not show the number of months attended by each pupil and some other facts which it ought to state, but the report, we think, was sufficient to furnish information to the county superintendent upon which to base his estimate of the amount of levy required.

In *Board of Education v. Allen County,* 82 Kan. 782, 109 Pac. 415, it was held that when the county superintendent certifies to the board the amount required it becomes ·the duty of the commissioners to make the levy, and they have no discretion in the matter. To the same effect see *School District v. Wilson County,* 82 Kan. 806, 109 Pac. 168, and *Board of Education v. Shepherd,* 90 Kan. 628, 135 Pac. 605. These cases were

brought under the Barnes high school law, but there is no difference in the two statutes in regard to the duty of the board to make the levy when the county superintendent has certified the amount.

While it is too late to compel a levy for the tax of 1913, the effect of the decision will control the action of the board in the levy of taxes for the future.

It follows from what has been said that the writ will issue.