No. 25,104.

School District No. 6, in Rooks County, *Appellee*, v. The Board of County Commissioners of the County of Rooks et al., *Appellants*.

### SYLLABUS BY THE COURT.

"Barnes High-school Law"—*Adopted at General Election in November— Law Became Applicable from Time of Canvass of Vote—Provision for Taxes for Maintenance of School During Remainder of Current School Year.* Where at the general election in November a vote is had in favor of adopting the "Barnes high-school law" for the county, that law becomes applicable there from the time of the canvass, and the obligation is placed upon the county to provide by a tax levy for the maintenance during the remainder of the school year of high schools coming under the provisions of such law— a duty which continues until a levy for that purpose is made.

Appeal from Rooks district court; Charles I. Sparks, judge. Opinion filed March 8, 1924. Affirmed.

*F. E. Young,* of Stockton, for the appellants.

*W. K. Skinner,* and *J. B. Riseley,* both of Stockton, for the appellee.

The opinion of the court was delivered by

Mason, J.: Prior to 1920 six school districts of Rooks county maintained high schools under the "free tuition" act, providing in substance that residents of territory having no accredited high schools might attend them elsewhere in the county, a fund for paying their tuition being raised by a tax levy on such territory. (R. S. 72-3801 to 72-3803.) On November 2, 1920, the proposal to adopt the Barnes law (R. S. 72-3001 to 72-3005 and 72-3017) was voted upon and three days later the canvass was made declaring the proposition adopted. A controversy arose as to whether a county tax should be levied to cover the expenses of maintaining these high schools for the twenty-seven weeks remaining in the school year of 1920-'21 after such canvass of the vote. School district No. 6, one of those referred to, brought this proceeding in the district court under the declaratory judgment statute (R. S. 60-3127 to 60-3132) against the county board to have that question determined, contending for an affirmative answer. On an agreed statement a decision was rendered in favor of the plaintiff and the defendant appeals.

It was stipulated that if it should be decided that the Barnes law became operative in the county at the time of the canvass a tax for

the purpose stated should be levied and collected, reports for the period involved to be submitted by the county superintendent to the board of commissioners.

The decision of the case turns upon the interpretation of portions of the statute reading:

"Whenever a majority of the voters voting on this proposition in any county, . . . to which this law may apply, at such election shall be in favor of such proposition, the provisions of this act shall apply in such county, . . . from the time such result is ascertained." (R. S. 72-3017.)

"The first levy shall be made when the result of the election or petition is determined, and a similar levy shall be made each year thereafter: *Provided,* No levy shall be made until one or more such high schools shall have been maintained in the county the preceding school year." (R. S. 72-3002.)

"It shall be the duty of the county superintendent of public instruction on or before the twenty-fifth day of July in each year to certify to the board of county commissioners the number of teachers employed in the several high schools complying with the provisions of this act in the county during the year ending on the thirtieth day of June preceding, counting, for the purpose of this act, each superintendent and each principal as one teacher, and the county commissioners shall levy a tax, not in excess of the limit prescribed for this purpose by law, which levy shall be sufficient to produce an amount equal to $800 multiplied by the number of teachers employed during the preceding year in the high schools complying with the provisions of this act, which number shall have been determined and certified by the county superintendent as herein provided; and in case the county commissioners shall fail to make such levy, then the county superintendent of public instruction shall make a suitable levy and shall certify the same to the county clerk, who shall enter upon the tax rolls the levy so made by the county superintendent." (R. S. 72-3005.)

The section last quoted might on its face seem to contemplate a levy each year to meet the expenses of the preceding year. But the language of the section of which it is an amendment shows quite clearly that the levy of each year is made to meet the expenses of the then ensuing year, the amount of which is based upon the number of teachers employed during the previous year. In its earlier form the section provided that upon the certificate of the county superintendent of the average daily attendance in the Barnes high schools for the preceding year, with an estimate of the amount necessary for the maintenance of the schools for "the ensuing year," the county commissioners should make a levy sufficient to produce that amount. (Laws 1907, ch. 333, § 1.) While the present statute changes the wording and the method of arriving at the amount to be raised, it is clear that the levy referred to is intended to meet the expenses of the ensuing and not of the past

year. The draftsmen of the section in its different forms obviously had in mind the regular annual levies for schools in the ordinary course of their administration and made no specific provision for the exceptional situation arising where the Barnes law has just taken effect and where means must be found in some way for meeting the expenses of the remainder of that school year. The statute says explicitly that the law shall become operative in the county from the time the vote is canvassed and that a levy shall be then made. As the question of the adoption of the law is required to be submitted at a general election it will necessarily go into effect early in November, when it is too late for the levy to be collected with the other taxes of the current year. The obligation being upon the county to provide the necessary revenue from the time the Barnes law becomes applicable, it seems to follow from the various statutory provisions that a levy to be collected with the taxes of 1921 should have been made in November, 1920, or at some time thereafter, to meet the expenses of the schools from November 5, 1920, to June 30, 1921, and another levy to be collected in 1921 should have been made after July 25, 1921, to meet the expenses of the school year ending June 30, 1922. The circumstance of the Barnes law having been adopted too late for an addition to be made to the taxes collectible that year does not affect the county's liability. The intention of the law can be carried out by a levy to be collected at a subsequent time. Various assessments are made at irregular periods throughout the year to be collected with the annual taxes. It has been held that taxes for a rural high-school district, created in August, can be levied for that year although the statute provides that such a levy shall be made in April and certified to the county clerk before July 25. (*Rural High-school District v. Raub,* 103 Kan. 757, 176 Pac. 110.) It is the provisions with regard to the time of action, not those with respect to the duty to make the levy, which are there held to be directory only. The failure to make provision for a tax at the proper time does not prevent its being raised by a later levy. The concluding paragraph of the opinion in *The State, ex rel., v. Haskell County,* 92 Kan. 961, 142 Pac. 246, was not intended to indicate the contrary.

Of course the requirement of the Barnes act that the county superintendent should on July 25 transmit to the board of commissioners a certificate made necessary by the subsequent adoption of the statute does not admit of literal fulfillment. There is no practical diffi-

culty, however, in such substantial compliance as to enable the manifest purpose of the law to be carried out.

It is suggested that the schools had not been maintained *under the Barnes law* for a year preceding the canvass of the election and therefore no levy under that law could have been made then. For that period, however, the schools had been maintained as the kind of accredited high schools covered by the Barnes law. This meets the requirement of the statute. An interpretation to the effect that no tax could be levied until the Barnes law had been in force a year would render it unworkable and would be in direct conflict with its explicit words providing for its immediate effectiveness and requiring a levy when the result of the election was determined. (See *Armstrong v. George,* 84 Kan. 248, 114 Pac. 209.)

The judgment is affirmed.