No. 53,196

THE KANSAS CITY STAR COMPANY, *Petitioner,* v. THE HONORABLE LEIGHTON A. FOSSEY, Associate District Judge, District Court of Miami County, Kansas, *Respondent.*

(630 P.2d 1176)

Opinion filed July 17, 1981.

*Myron S. Silverman,* of Gage & Tucker, of Kansas City, Missouri, *Scott Whiteside,* of Kansas City, Missouri, and *Carl W. Hartley,* of Rinehart, Bright & Hartley, of Paola, were on the pleadings and briefs for the petitioner.

*Dan Biles,* assistant attorney general, and *Robert T. Stephan,* attorney general, were on the pleadings and briefs for the respondent.

The opinion of the court was delivered by

PRAGER, J.: This is an original action in mandamus filed by the Kansas City Star Company to compel the Honorable Leighton A. Fossey, Associate District Judge of the Sixth Judicial District, to allow petitioner access to certain criminal proceedings in the case of *State of Kansas v. James M. Crumm,* and all future criminal proceedings which the respondent may order closed. The petition for a writ of mandamus was filed on May 1, 1981. This court on May 7, 1981, directed the respondent, Judge Fossey, to respond to the petition. The attorney general appeared on behalf of respondent and filed an entry of appearance and a motion to dismiss the petition for mandamus. The essential facts in the case are not in dispute. They are either admitted by the parties or contained in transcripts of proceedings in the district court held on April 27 and 28, 1981.

The case of *State of Kansas v. James M. Crumm* arose from a

homicide which occurred on April 17, 1980, in a secluded area of Miami County. James M. Crumm, a juvenile, was certified as an adult and charged with the first-degree murder of his thirteen-year-old stepbrother, Christen Andrea Hobson. Another juvenile, Paul Sorrentino, was also jointly charged with the killing. A great amount of news media publicity developed as a result of the case. The case proceeded to trial in Miami County and James M. Crumm was convicted of first-degree murder. The trial caused a great deal of interest in Miami County, since it was the first murder trial in at least eight years for this rural county.

The preliminary hearing in the case was held in February of 1981. During the course of the preliminary hearing, a motion was made by the defense to close the preliminary hearing to the press and public while the court considered a suppression motion made with regard to defendant's confessions. The Kansas City Star Company immediately filed an *amicus curiae* brief in opposition to the motion for closure. The motion for closure was argued and all parties, including the Kansas City Star Company, were given an opportunity to be heard. Judge Stephen D. Hill, who heard the motion, overruled defendant's motion to close that portion of the preliminary hearing. Judge Hill, in substance, found that the defendant had failed to make a satisfactory showing that there was a substantial probability that the defendant's right to a fair trial would be prejudiced if closure was denied. The preliminary hearing was then conducted in open court and, at the close of that proceeding, James M. Crumm was bound over for trial on the charge of murder in the first degree.

On April 27, 1981, the trial of James M. Crumm was commenced. A jury was selected but, prior to the swearing in of the jury, the respondent, Judge Fossey, on his own motion stated that he desired to conduct a *Jackson v. Denno* suppression hearing concerning the voluntary nature of two incriminating statements made by Crumm to the police. Earlier, on April 22, 1981, defense counsel had specifically waived any *Jackson v. Denno* hearing concerning these statements. That waiver was reaffirmed by the defense on April 27, 1981.

After the judge made known his intention to call a *Jackson v. Denno* hearing on his own motion, a discussion in open court was held between the judge and counsel concerning the closing of the suppression hearing. The judge indicated his desire to close the

hearing to the public. Defense counsel concurred. Three reporters stood and identified themselves at this time. An objection to the closing was raised by Liz Reardon, a reporter for the Kansas City Times. She read a statement previously prepared by her employer for just such a purpose. The statement contained the newspaper's request for a hearing on the closure issue and then summarized legal arguments outlining the legal standards for closing a criminal proceeding as viewed by the newspaper. The basis of petitioner's argument was the decision of the United States Supreme Court in *Gannett Co. v. DePasquale*, 443 U.S. 368, 61 L.Ed.2d 608, 99 S.Ct. 2898 (1979).

In response to the statement read by Ms. Reardon, counsel for the defendant pointed out that the same issue had previously been raised at the preliminary hearing before Judge Stephen D. Hill and that the respective positions of the parties and the news media had already been presented. In addition, defense counsel suggested that the proceedings then before the court differed materially from the prior hearing, in that the case was now at the trial stage. He pointed out that a jury had already been impaneled, that the newspaper and television media were present and were going to be talking about the case, and that there was a substantial danger of publicity prejudicial to the defendant until such time as the validity and admissibility of the two confessions could be determined. Defense counsel also suggested that it would be highly prejudicial to the defendant to continue the trial and to spend further time on a hearing to determine the issue of closure.

Following the arguments, Judge Fossey stated for the record:

"THE COURT: This is a special hearing, which does not entail anything concerning the evidence in the case. It is to determine simply whether or not any confession made by the defendant is to be admissible in evidence.

"We do have a jury impaneled. We have had considerable publicity concerning the case already, and rather than subject the jury, in spite of my admonition, to possible influence by a report of this hearing, I will overrule the motion of the Kansas City Star and order that the hearing be closed."

All persons, except court personnel, were required to leave the courtroom at that time.

Following this ruling, the courtroom was closed and the suppression hearing was conducted. A transcript of the suppression hearing has been filed with the Clerk of the Appellate Courts and has been considered by this court. Only two witnesses were called. Both were police officers. One of the witnesses, a detective

with the Overland Park police department, testified as to an inculpatory statement taken from James Crumm on May 3, 1980. The other witness, a deputy sheriff of the Miami County sheriff's department, testified as to an inculpatory statement taken from James Crumm on May 4, 1980. Following the introduction of this testimony, Judge Fossey ruled that the two confessions would be admitted into evidence at the trial. In addition, the court stated in the record that members of the press would be able to be present in the courtroom and hear matters of evidence but that he would not permit the press to read the confessions prior to their introduction at the trial. The reason for this ruling was that the reporters were looking for news, a jury had already been impaneled, and the judge did not want the jury exposed to any more publicity than necessary.

On the following day, April 28, 1981, the Kansas City Star Company filed a motion to intervene to present a motion to vacate the closure order and for a copy of the transcript of the proceedings at the *Jackson v. Denno* suppression hearing conducted the previous day. After hearing the arguments of the *amicus curiae,* Kansas City Star Company, and of defense counsel, the judge denied the motion to vacate his original closure order. The judge did, however, sustain the motion of the Kansas City Star Company for a copy of the transcript of the suppression hearing when the transcript was prepared by the reporter. Copies of the transcript taken during the suppression hearing were later prepared. A copy was subsequently filed with the Clerk of the Miami District Court and is a part of the public record in the case of *State v. Crumm.* A copy of this transcript was also filed with the Clerk of the Appellate Courts as a part of the record in this action.

On April 27, 1981, the case of *State v. Crumm* proceeded to trial, resulting in a jury verdict of guilty of first-degree murder on May 1, 1981. On the same day, the Kansas City Star Company filed this original proceeding in mandamus in the Supreme Court. The respondent filed a motion to dismiss the petition for mandamus, raising the following four issues:

(1) The instant case is moot;

(2) The petitioner has an adequate remedy at law precluding the necessity of filing this extraordinary action in mandamus;

(3) The exclusion of the press and public from an evidence suppression hearing in a first-degree murder case involves a

discretionary action of the trial court, thereby precluding mandamus; and

(4) The trial court's decision to close the suppression hearing in this particular case was properly founded within the Constitution.

We have carefully considered the petition in mandamus and the motion to dismiss filed in response thereto. We have determined that there is no issue of fact presented in the case and that the public interest justifies the court in considering the case on its merits. On occasions, this court, when confronted with significant issues of statewide concern, has broadened the availability of mandamus in order to expeditiously resolve such issues. *Stephens v. Van Arsdale,* 227 Kan. 676, 608 P.2d 972 (1980). In *Stephens,* we held that mandamus may properly be used to expedite the official business of state officials in the discharge of their duties, where the issues are of significant statewide concern of a recurring and ongoing nature, and the essential purpose of the proceeding is to obtain an expeditious, authoritative interpretation of the law. On the basis of *Stephens,* we find that mandamus is an appropriate remedy in this case.

The respondent has raised the issue that the case is moot because the trial of *State v. Crumm* has been completed in the district court. The suppression hearing, closed to the public and press, was conducted and completed by the district judge on April 27, 1981. A copy of the transcript of that suppression hearing has been made available to the news media. It is true that, technically, the case is moot. We hold, however, that the case is not so moot as to preclude review by this court since it can reasonably be expected that the petitioner in this case would be objecting to similar closure orders entered by other district courts in other cases. In view of petitioner's newspaper coverage in the state, the underlying dispute between the parties is one capable of repetition, yet evading review. We thus decline to dismiss the writ of mandamus on the basis of mootness. See *Richmond Newspapers, Inc., v. Virginia,* 448 U.S. 555, 65 L.Ed.2d 973, 100 S.Ct. 2814 (1980); *Reece Shirley & Ron's Inc. v. Retail Store Employees Union & Local 782,* 225 Kan. 470, 592 P.2d 433 (1979).

In our judgment, the validity of the decision of Judge Fossey closing the suppression hearing is controlled by *Gannett Co. v.*

*DePasquale,* 443 U.S. 368, rather than by *Richmond Newspapers, Inc., v. Virginia.* Gannett involved a pretrial *suppression* hearing. *Richmond Newspapers, Inc.,* involved the closing of a portion of the actual trial of a criminal case being presented on its merits before a jury. This case is somewhat unique, since the suppression hearing was conducted by the trial court *after* the jury was impaneled but before the jury was sworn. However, all of the evidence offered by the State and by the defense was presented to the jury in a hearing fully open to the public and to the news media. Thus, the public and the reporters for the petitioner, Kansas City Star Company, had a full opportunity to hear every bit of evidence presented by the prosecution and defense which was considered by the jury in determining the guilt or innocence of James M. Crumm, including the two confessions which were the subject of the suppression hearing.

K.S.A. 22-3215 provides as follows:

"**22-3215. Motion to suppress confession or admission.** (1) Prior to the preliminary examination or trial a defendant may move to suppress as evidence any confession or admission given by him on the ground that it is not admissible as evidence.

"(2) The motion shall be in writing and shall allege the grounds upon which it is claimed that the confession or admission is not admissible as evidence.

"(3) If the motion alleges grounds which, if proved, would show the confession or admission not to be admissible the court shall conduct a hearing into the merits of the motion.

"(4) The burden of proving that a confession or admission is admissible shall be on the prosecution.

"(5) The issue of the admissibility of the confession or admission shall not be submitted to the jury. The circumstances surrounding the making of the confession or admission may be submitted to the jury as bearing upon the credibility or the weight to be given to the confession or admission.

"(6) The motion shall be made before preliminary examination or trial, unless opportunity therefor did not exist or the defendant was not aware of the ground for the motion, but *the court in its discretion may entertain the motion at the preliminary examination or the trial."* (Emphasis supplied.)

It is important to note that K.S.A. 22-3215 contemplates that, in the usual situation, a motion to suppress as evidence a confession or admission shall be made before the preliminary examination or trial unless opportunity did not exist or the defendant was not aware of the ground for the motion. Under subsection (6), however, a trial court in its discretion may entertain the motion at the trial.

It is well recognized that adverse publicity can endanger the

ability of a defendant to receive a fair trial. Where a motion to suppress is heard prior to or shortly after the preliminary hearing and there may be adverse publicity at that time, the prejudicial effect of such publicity often abates between the time of the preliminary hearing and the time the case is actually set for trial. Where, however, a hearing on a motion to suppress is held on the day of the trial after a jury has been selected and the jurors are in the courthouse, a greater danger exists that disclosure of evidence at the suppression hearing will prejudice the defendant's right to a fair trial. At that point, the members of the jury, called to try the particular case, are more susceptible to influence from the publicity. A defendant's right to a fair trial may be seriously prejudiced where an inadmissible confession of the defendant is brought to the jurors' attention by media publicity.

In *Gannett Co. v. DePasquale,* 443 U.S. at 378-79, the following statement is made in the opinion by Justice Stewart:

"This Court has long recognized that adverse publicity can endanger the ability of a defendant to receive a fair trial. *E.g., Sheppard v. Maxwell,* 384 U.S. 333; *Irvin v. Dowd,* 366 U.S. 717; *Marshall v. United States,* 360 U.S. 310. *Cf. Estes v. Texas,* 381 U.S. 532. To safeguard the due process rights of the accused, a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity. *Sheppard v. Maxwell, supra.* And because of the Constitution's pervasive concern for these due process rights, a trial judge may surely take protective measures even when they are not strictly and inescapably necessary.

"Publicity concerning pretrial suppression hearings such as the one involved in the present case poses special risks of unfairness. The whole purpose of such hearings is to screen out unreliable or illegally obtained evidence and insure that this evidence does not become known to the jury. *Cf. Jackson v. Denno,* 378 U.S. 368. Publicity concerning the proceedings at a pretrial hearing, however, could influence public opinion against a defendant and inform potential jurors of inculpatory information wholly inadmissible at the actual trial.

"The danger of publicity concerning pretrial suppression hearings is particularly acute, because it may be difficult to measure with any degree of certainty the effects of such publicity on the fairness of the trial. After the commencement of the trial itself, inadmissible prejudicial information about a defendant can be kept from a jury by a variety of means. When such information is publicized during a pretrial proceeding, however, it may never be altogether kept from potential jurors. Closure of pretrial proceedings is often one of the most effective methods that a trial judge can employ to attempt to insure that the fairness of a trial will not be jeopardized by the dissemination of such information throughout the community before the trial itself has even begun. *Cf. Rideau v. Louisiana,* 373 U.S. 723."

Thus, *Gannett* specifically sanctions a closure decision of a trial court, when closure is necessary to insure a fair trial for the defendant.

The petitioner urges that the respondent's closure order constituted a violation of petitioner's right of freedom of speech under the First Amendment to the United States Constitution by restricting access to information which would have been available to petitioner had its reporter been able to attend the suppression hearing. It should be noted in this regard that the petitioner does not occupy a special status distinct from that of the general public. The petitioner's right to be present is derived from its status as a member of the public. *Gannett Pacific Corp. v. Richardson,* 580 P.2d 49, 54 (Hawaii 1978); *Richmond Newspapers, Inc., v. Virginia,* 448 U.S. at 578.

In recent years, there has been a great deal of discussion on the subject of "fair trial and free press" and the right of the public and news media to attend court proceedings. There is almost universal agreement among the courts and writers who have considered the issue that access to court proceedings should be limited only in exceptional circumstances. It has been said that the reason for requiring all court proceedings to be open, except where extraordinary reasons for closure are present, is to enhance the public trust and confidence in the judicial process and to insulate the process against attempts to use the courts as tools for persecution. The problem, of course, is to establish criteria or standards to guide a trial court in the exercise of its discretion in determining whether or not a closure order should be made.

There are no prior decisions of this court setting standards in this area as a guide to the Kansas trial courts. In our judgment, the standard adopted August, 1978, by the American Bar Association's Standing Committee on Association Standards for Criminal Justice represents the most acceptable approach to the right-of-access problem. Specifically, we refer to Fair Trial and Free Press: Standard 8-3.2 which provides as follows:

"Except as provided below, pretrial proceedings and their record shall be open to the public, including representatives of the news media. If at the pretrial proceeding testimony or evidence is adduced that is likely to threaten the fairness of a trial, the presiding officer shall advise those present of the danger and shall seek the voluntary cooperation of the news media in delaying dissemination of potentially prejudicial information by means of public communication until the impaneling of the jury or until an earlier time consistent with the fair administration of justice. The presiding officer may close a preliminary hearing, bail hearing, or any other pretrial proceeding, including a motion to suppress, and may seal the record only if:

"(i) the dissemination of information from the pretrial proceeding and its record

would create a clear and present danger to the fairness of the trial, and

"(ii) the prejudicial effect of such information on trial fairness cannot be avoided by any reasonable alternative means.

"The defendant may move that all or part of the proceeding be closed to the public (including representatives of the news media), or, with the consent of the defendant, the presiding officer may take such action sua sponte or at the suggestion of the prosecution. Whenever under this rule all or part of any pretrial proceeding is held in chambers or otherwise closed to the public, a complete record shall be kept and made available to the public following the completion of trial or earlier if consistent with trial fairness." pp. 43-44.

The commentary of the standards committee (2d ed. Tentative Draft) following Standard 8-3.2 discusses in some detail the purpose of the standard and the sometimes conflicting interests of the accused, the public, and news media. It suggests certain procedural alternatives which should be considered by a trial court in determining the closure issue. The commentary states:

"The policy underlying this standard is a strong presumption in favor of open judicial proceedings and free access to records in a criminal case. Although this standard deals only with pretrial proceedings, the general principle extends to every phase of judicial proceedings in a criminal case.

"The sixth amendment speaks in terms of the right of the accused to a public trial, but this right does not belong solely to the accused to assert or forgo as he or she desires. Many courts have recognized that the public generally has an overlapping and compelling interest in public trials. The defendant's interest, primarily, is to ensure fair treatment in his or her particular case. While the public's more generalized interest in open trials includes a concern for justice to individual defendants, it goes beyond that. The transcendent reason for public trials is to ensure efficiency, competence, and integrity in the overall operation of the judicial system. Thus, the defendant's willingness to waive the right to a public trial in a criminal case cannot be the deciding factor. This holds true no matter how personally beneficial private proceedings in a criminal case might be to the defendant. It is just as important to the public to guard against undue favoritism or leniency as to guard against undue harshness or discrimination.

"The role of the news media in this process is especially significant. Few individuals have the time or inclination to observe personally the operation of the criminal justice system. Representatives of the news media largely serve that function. It has been argued that the press has a first amendment right of access to the courts and court records that exceeds such rights of members of the public generally. This view has been rejected by the courts.

"The policy in this standard in favor of open proceedings and free access to court records rests on sixth amendment grounds. It is subject to important limitations. When there is a threat to the defendant's right to a fair trial, the trial judge is obligated to take steps to neutralize that threat. The first step in the process should be to seek a voluntary agreement with members of the news media about the timing and scope of coverage. It is undesirable to resolve such questions by litigation without first considering informal and less antagonistic measures.

The use of voluntary fair trial-free press agreement is already a practice in many jurisdictions, and the trend should be encouraged. In any event, if a voluntary agreement is reached between representatives of the news media and the court, any delay in the publication of potentially prejudicial information should be only until the impaneling of the jury, and shorter if possible.

"The principles embodied in standard 8-3.2 represent a significant departure from original standard 3.1. The substance of the standard, however, is the option of closing pretrial proceedings and sealing judicial records. Before pretrial proceedings can be closed or any record sealed, the two-part test of the standard must be met. The moving party must establish that: (1) a clear and present danger to the fairness of the trial would exist if the information were publicly disclosed, and (2) the prejudicial effect of such information on the fairness of the trial cannot be avoided by reasonable alternative means. The standard does not enumerate possible procedural alternatives, but the effectiveness of the following should receive serious consideration: (1) continuance, (2) severance, (3) change of venue, (4) change of venire, (5) intensive voir dire, (6) additional peremptory challenges, (7) sequestration of the jury, and (8) admonitory instructions to the jury.

"The public interest in open proceedings and free access to courts in a criminal case is at least as strong as the first amendment policy against prior restraints. Consequently, this standard follows the basic approach taken by the Supreme Court in *Nebraska Press Association v. Stuart,* [427 U.S. 539 (1976)]. Although developed in the context of a prior restraint case, that approach or its equivalent has been applied in the present context by a number of courts. The question might legitimately be raised, however, why the *Nebraska Press Association* test is adopted in this standard but rejected in standard 8-3.1. The answer lies in the fact that there is a crucial difference between imposing prior restraints against the press on the one hand and the denial of access to news sources on the other. The administration of a system of prior restraints necessarily involves the courts in overseeing the press; the entanglement of the courts and the press results in unavoidable and perhaps unintended suppression of first amendment values no matter how carefully or conscientiously a court may draw the line between protected and unprotected speech. There is less difficulty where closure of judicial proceedings and sealing of court records are at issue. Hence, case-by-case adjudication is acceptable under this standard, but not under standard 8-3.1.

"The last paragraph in standard 8-3.2 requires that any motion to close a pretrial proceeding or seal court records be made with the consent of the defendant. The motion, however, cannot be granted unless the court affirmatively concludes that the requirements of the clear and present danger and least restrictive alternative tests have been met. The burden of proof is on the party making the motion. The standard thus clarifies the language of original standard 3.1 stating that the motion to close a pretrial hearing 'shall be granted unless the presiding officer determines that there is no substantial likelihood' of interference with the defendant's right to a fair trial by an impartial jury.

"The last sentence in standard 8-3.2 provides that when a procedure is held in chambers or otherwise closed to the public, a complete transcript shall be kept and made available after the conclusion of the trial or disposition without trial. The purpose of this requirement is to provide a surrogate method of examining the conduct of closed proceedings. The transcript is the only possible substitute for the denial of access."

To insure compliance with this standard, a record of the hearing where the issue of closure is determined should be prepared. In making a decision of either closure or nonclosure, the trial judge should make findings and state for the record the evidence upon which the court relied and the factors which the court considered in arriving at its decision. Such a procedure will protect both the right of the defendant to a fair trial and the right of the public and news media to have access to court proceedings.

In the case now before us, the respondent conducted a hearing on the record and made rather cursory findings in support of his decision for closure of the suppression hearing. We must recognize, however, that when the closure decision was made, there were no existing standards to guide the court. We cannot say that Judge Fossey abused his discretion in ordering a closure of the suppression hearing in this case after considering the evidentiary record before us.

Following the impaneling of the jury, but before the jury was sworn, Judge Fossey, in his discretion, determined that there should be an evidentiary hearing on the admissibility of Crumm's two confessions. Although the confessions had been introduced at the preliminary hearing, they had not yet come to the attention of the twelve persons selected to serve as a trial jury in the Crumm case. It is clear that the statements were particularly incriminating to the defendant. Voir dire of the potential jurors had already been completed, and the selected jurors excused before the issue of closure of the hearing arose. The trial court was cognizant of the considerable pretrial publicity that had arisen in this unusual murder case. Apparently, there are no adequate facilities to sequester the jury available at the Miami County courthouse. When the possibility of closure was raised by Judge Fossey in open court, a representative of the Kansas City Star Company was given an opportunity to argue its position.

The trial court found that closure was justified, pointing out (1) the nature of the special hearing was strictly to determine whether any confession made by the defendant was to be admitted into evidence; (2) a jury had already been selected; (3) there was considerable publicity concerning the case already; and (4) the possibility existed the jury might be influenced by a report on this special hearing despite the judge's admonition to the jurors

concerning news media accounts. We further note that there is no evidence that the State objected to the closure order. The following day, attorneys for the petitioner were permitted to intervene in the action, and to argue the motion to vacate the closure order. The court ordered that a complete transcript of the suppression hearing be made available to the petitioner. No other portion of the criminal proceedings in *State v. James C. Crumm* was closed to the public and the press. On the basis of these undisputed facts, we find that the respondent, Judge Fossey, did not abuse his discretion either in refusing to continue the suppression hearing until a separate hearing on the closure issue could be scheduled or in ordering closure of the suppression hearing. As to future closure determinations, this court has, by this opinion, adopted Fair Trial and Free Press Standard 8-3.2 which will govern the closure issue in future cases.

For the reasons set forth above, it is the judgment of the court that the petition for a writ of mandamus be denied.