IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 125,269

STATE OF KANSAS,
*Appellee*,

v.

JASON W. PHIPPS,
*Appellant.*

SYLLABUS BY THE COURT

1.

The judicial power is granted by article 3, section 1 of the Kansas Constitution. That power is the power to hear, consider, and determine controversies between rival litigants.

2.

A case is moot when a court determines that it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights.

3.

Once a court determines that an issue is moot, courts lack constitutional authority to review that issue.

4.

To the extent prior caselaw suggests, or explicitly states, that courts may exceed the power granted to us by the Kansas Constitution and consider moot issues, those decisions are overruled.

1

Review of the judgment of the Court of Appeals in 63 Kan. App. 2d 698, 539 P.3d 227 (2023). Appeal from Sumner District Court; WILLIAM R. MOTT, judge. Oral argument held May 8, 2024. Opinion filed June 27, 2025. Appeal dismissed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Natalie Chalmers*, principal assistant solicitor general, argued the cause, and *Kris W. Kobach*, attorney general, was with her on the briefs for appellee.

The opinion of the court was delivered by

STEGALL, J.: Jason W. Phipps pled no contest to two felonies and two misdemeanors in 2022. The presentence investigation report calculated a criminal history score of B. Phipps objected to this score, arguing that his 2010 conviction for criminal threat should not be counted because *State v. Boettger*, 310 Kan. 800, 822-23, 450 P.3d 805 (2019), struck down reckless criminal threat as unconstitutionally overbroad in violation of the First Amendment—and because K.S.A. 21-6810(d)(9) forbids counting convictions arising under statutes that have since been found unconstitutional for criminal history purposes. The district court employed the modified categorical approach to examine the record of the 2010 conviction and concluded the conviction was for the intentional version of criminal threat and sentenced him utilizing the B score.

While Phipps' appeal was pending before the Court of Appeals, the United States Supreme Court issued *Counterman v. Colorado*, 600 U.S. 66, 80, 143 S. Ct. 2106, 216 L. Ed. 2d 775 (2023), which held that a reckless mens rea is sufficient to sustain a criminal threat conviction. The Court of Appeals panel determined that *Counterman* overruled

2

*Boettger*, found it was now irrelevant whether Phipps' conviction was for the reckless or intentional version of criminal threat, and affirmed his sentence. *State v. Phipps*, 63 Kan. App. 2d 698, 704-10, 539 P.3d 227 (2023).

We granted Phipps' petition for review. However, during our consideration of this case, we received notice that Phipps has completed his sentence. Phipps did not contest this change in circumstances. We ordered further briefing from both parties to determine what effect, if any, Phipps' change in custodial status should have on the issues pending in this case. Specifically, we asked whether Phipps' release from custody rendered the issues before us moot. We also asked whether, if moot, any of the "prudential exceptions" to mootness identified in *State v. Roat* would apply to allow us to consider the merits. 311 Kan. 581, 466 P.3d 439 (2020).

After considering these subsequent developments and arguments, we explicitly overrule our holding in *Roat*—which permitted review of otherwise moot questions upon certain prudential exceptions—and hold that once an issue is judicially determined to be moot, jurisdiction over that issue is extinguished completely. Because mootness is a jurisdictional bar, we hold there are no "prudential exceptions" allowing a Kansas court to review otherwise moot issues.

ANALYSIS

The judicial power in Kansas is established by article 3, section 1 of the Kansas Constitution. That power is the "'power to hear, consider and determine controversies between rival litigants.'" *Baker v. Hayden*, 313 Kan. 667, 672, 490 P.3d 1164 (2021); *State, ex rel. Brewster v. Mohler*, 98 Kan. 465, 471, 158 P. 408 (1916), *aff'd sub nom. Payne v. State of Kansas ex rel. Brewster*, 248 U.S. 112, 39 S. Ct. 32, 63 L. Ed. 153 (1918).

"'But because Article 3 of the Kansas Constitution does not include any "case" or "controversy" language, our case-or-controversy requirement stems from the separation of powers doctrine embodied in the Kansas constitutional framework. That doctrine recognizes that of the three departments or branches of government, "[g]enerally speaking, the legislative power is the power to make, amend, or repeal laws; the executive power is the power to enforce the laws, and the judicial power is the power to interpret and apply the laws *in actual controversies*."'" *Rivera v. Schwab*, 315 Kan. 877, 902, 512 P.3d 168 (2022) (quoting *Gannon v. State*, 298 Kan. 1107, 1119, 319 P.3d 1196 [2014]).

Until recent missteps in our caselaw, this has meant that courts never have constitutional authority to render advisory opinions. See *State v. Cheever*, 306 Kan. 760, 786, 402 P.3d 1126 (2017) ("Because the Kansas Constitution's framework 'limit[s] the judicial power to actual cases and controversies,' Kansas courts do not have the power to give advisory opinions."), *abrogated on other grounds by State v. Boothby*, 310 Kan. 619, 448 P.3d 416 (2019); *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 889, 179 P.3d 366 (2008) ("The prohibition against advisory opinions is imposed by the United States and Kansas Constitutions.").

The definition of mootness is well settled. "A case is considered moot when a court determines that '"it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights."'" *Sierra Club v. Stanek*, 317 Kan. 358, 361, 529 P.3d 1271 (2023) (quoting *Roat*, 311 Kan. at 584 [quoting *State v. Montgomery*, 295 Kan. 837, 840-41, 286 P.3d 866 (2012) (quoting *McAlister v. City of Fairway*, 289 Kan. 391, 400, 212 P3d 184 [2009])]). It must therefore follow that once "a case or controversy has ended, our jurisdiction ends." See *Roat*, 311 Kan. at 604 (Stegall, J., concurring).

4

In other words, once a court determines that an issue is moot, jurisdiction over that issue or question ends. The structural guarantees embedded in our Constitution prevent courts from hearing these "otherwise moot" cases under "prudential exceptions." Our past practice of framing mootness as a doctrine of court policy rather than a question of jurisdiction has led to the unconstitutional practice of issuing advisory opinions "when we want to." 311 Kan. at 604 (Stegall, J., concurring). This practice violates our constitutional guarantee of separate powers. See *Cheever*, 306 Kan. at 786 ("Kansas courts do not have the power to give advisory opinions."); *NEA-Topeka, Inc. v. U.S.D. No. 501*, 227 Kan. 529, 532, 608 P.2d 920 (1980) (A "court is without constitutional authority to render advisory opinions," because "[s]uch an opinion would go beyond the limits of determining an actual case or controversy and would violate the doctrine of separation of powers.").

We also acknowledge, as the court did in *Roat*, that federal precedent has been anything but clear on this issue. As the court in *Roat* pointed out:

> "In a concurring opinion in *Honig v. Doe*, 484 U.S. 305, 330-31, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988), Chief Justice Rehnquist discussed the evolution of the federal jurisdictional mootness doctrine. He noted that the federal courts rely on the 'case or controversy' requirement—*except when they don't*." (Emphasis added.) *Roat*, 311 Kan. at 589.

In that same concurring opinion, Chief Justice Rehnquist described the federal doctrine of mootness as having only an "attenuated connection" to the case or controversy requirement of Article III of the United States Constitution. *Honig v. Doe*, 484 U.S. 305 331-32, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988). The *Roat* court accepted the Chief Justice's invitation to allow for "prudential" exceptions for "otherwise moot" cases. See *Roat*, 311 Kan. at 590 ("Kansas recognizes an exception, for example, for cases that are

otherwise moot but that raise issues that are capable of repetition and present concerns of public importance."). We now recognize, however, that under the Kansas Constitution, Kansas courts do not have this flexibility.

When necessary, we will construe Kansas constitutional provisions independent of how federal courts interpret corresponding provisions of the United States Constitution. This may result in the Kansas Constitution providing greater or different protections. *State v. Albano*, 313 Kan. 638, 644, 487 P.3d 750 (2021). The Kansas Constitution, not our federal Constitution, determines the limit on our judicial power. And it is Kansas law, not federal law, that determines the existence of a case or controversy. See *Rivera*, 315 Kan. at 902.

Our mootness doctrine is firmly tied (rather than having an "attenuated connection") to the case or controversy requirement, which is rooted in the separation of powers doctrine embodied in the framework of our Constitution. The separation of powers is a structural guarantee of our Constitution which exists to secure the full range of human liberty. *Solomon v. State*, 303 Kan. 512, 546, 364 P.3d 536 (2015) (Stegall, J., concurring) ("Constitutional limits enforced under the protective umbrella of the rule of law derive their ultimate authority from the political power of the people and exist for the protection and propagation of liberty under the law.").

While federal and state mootness jurisprudence may differ at times, when it comes to the doctrine of separation of powers, "the Kansas Constitution is almost identical to the federal Constitution." 303 Kan. at 525; *Gleason v. Samaritan Home*, 260 Kan. 970, 982, 926 P.2d 1349 (1996). "By emphasizing principles like limited government, separation of powers, and checks and balances, [the framers] aimed to prevent any single branch from becoming tyrannical." *League of Women Voters of Kansas v. Schwab*, 318 Kan. 777, 845, 549 P.3d 363 (2024) (Standridge, J., concurring in part and dissenting in part). These structural guarantees are reflected in the federal Constitution as well.

6

> "The allocation of power among Congress, the President, and the courts [is allocated] in such fashion as to preserve the equilibrium the Constitution sought to establish—so that 'a gradual concentration of the several powers in the same department,' Federalist No. 51, p. 321 (J. Madison), can effectively be resisted." *Morrison v. Olson*, 487 U.S. 654, 699, 108 S. Ct. 2597, 101 L. Ed. 2d 569 (1988) (Scalia, J., dissenting).

It is clear that "the giving of advisory opinions is an executive, not a judicial, power." *State ex rel. Morrison*, 285 Kan. at 885. The so-called "prudential exceptions" which were recognized in *Roat* shift that power away from the executive branch and toward the judiciary.

Arguments in favor of judicially crafted "prudential exceptions" are often grounded in claims of convenience and judicial economy. *Roat*, 311 Kan. at 587 ("Recognizing mootness to be a discretionary policy aimed at avoiding unnecessary or fruitless issues has the benefit of allowing a court to consider moot issues when judicial economy would benefit from a decision on the merits."). And while it may be more convenient in the short term for courts to consider some moot questions—especially those likely to repeat themselves—doing so when these decisions are not properly within the judicial power to decide erodes the structural guarantees of our Constitution. See Scalia, Opening Statement to the Senate Judiciary Committee: Role of Judges Under U.S. Constitution (October 5, 2011). However inconvenient waiting for a genuine controversy may appear, it exists for the protection of all Kansans. See Madison, The Federalist No. 51, p. 321 and No. 47, p. 301 (C. Rossiter ed. 1961) (The fundamental purpose of such walls of separation, however inconvenient, is to prevent the "gradual concentration of the several powers in the same department" which "may justly be pronounced the very definition of tyranny.").

We do not overrule past precedent lightly. Courts endeavor to adhere to the principle of stare decisis unless clearly convinced that a rule of law established in earlier

cases "'was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent.'" *Jarmer v. Kansas Dept. of Revenue*, 318 Kan. 671, 673-74, 546 P.3d 743 (2024) (quoting *State v. Clark*, 313 Kan. 556, 565, 486 P.3d 591 [2021]).

Because we are confronted with a question of jurisdiction—that is, a question concerning our very power to act as a court under our Constitution—our deference to stare decisis must adjust accordingly. Stare decisis is "not a mechanical formula of adherence to the latest decision," especially when such adherence conflicts with a prior and more foundational doctrine of constitutional law. *Helvering v. Hallock*, 309 U.S. 106, 119, 60 S. Ct. 444, 84 L. Ed. 604 (1940) ("[S]tare decisis is a principle of policy and not a mechanical formula of adherence to the latest decision, however recent and questionable, when such adherence involves collision with a prior doctrine more embracing in its scope, intrinsically sounder, and verified by experience."). The scope of the judicial power itself is one such prior and foundational doctrine, meaning that "stare decisis has less significance in areas involving important jurisdictional questions." *Ruegsegger v. Comm'r of Internal Revenue*, 68 T.C. 463, 465 (1977).

This is true, at least in part, because an appellate court has a duty to question jurisdiction on its own initiative. When the record discloses a lack of jurisdiction, the appellate court must dismiss the appeal. *In re I.A.*, 313 Kan. 803, 805-06, 491 P.3d 1241 (2021). And whether jurisdiction exists is a question of law, subject to unlimited appellate review. *State v. Hillard*, 315 Kan. 732, 775, 511 P.3d 883 (2022).

We know too that "stare decisis is at its weakest in constitutional cases because our mistakes cannot be easily corrected by ordinary legislation. *State v. Hoeck,* 284 Kan. 441, 463, 163 P.3d 252 (2007)." *Miller v. Johnson*, 295 Kan. 636, 708, 289 P.3d 1098 (2012) (Beier, J., concurring in part and dissenting in part). Moreover,

8

"[o]ur allegiance must be to the Constitution itself, 'not what we have said about it.' *Graves v. N.Y. ex rel. O'Keefe*, 306 U.S. 466, 491-92, 59 S. Ct. 595, 83 L. Ed. 927 (1939) (Frankfurter, J., concurring); see also *Harris v. Anderson*, 194 Kan. 302, 314, 400 P.2d 25 (1965) (Fatzer, J., dissenting) (quoting 3 Warren, The Supreme Court in United States History, p. 470: '"However the court may interpret the provisions of the Constitution, it is still the Constitution which is the law and not the decision of the court. 'To the decision of an underlying question of constitutional law no . . . finality attaches. To endure, it must be right.'"')." *Miller*, 295 Kan. at 708-09 (Beier, J., concurring in part and dissenting in part).

Finally, the boundaries of mootness have been debated for decades in the pages of this court's opinions. See *Graves v. State Board of Pharmacy*, 188 Kan. 194, 197, 362 P.2d 66 (1961) (courts have no authority other than to dismiss an action that is moot); *NEA-Topeka, Inc.*, 227 Kan. at 531-32 (determining moot questions would go beyond the limits of determining an actual case or controversy and violate the separation of powers); *Miller v. Insurance Management Assocs., Inc.*, 249 Kan. 102, 109-10, 815 P.2d 89 (1991) (mootness is a jurisdictional consideration); *Allenbrand v. Contractor*, 253 Kan. 315, 317, 855 P.2d 926 (1993) (mootness is jurisdictional); *Sheila A. v. Finney*, 253 Kan. 793, 796-97, 861 P.2d 120 (1993) (mootness is jurisdictional); *State ex rel. Morrison*, 285 Kan. at 888-98 (A moot issue fails to present a case or controversy, and Kansas courts are without power to decide that issue.). But see *Moore v. Smith*, 160 Kan. 167, 170-71, 160 P.2d 675 (1945) (mootness is a doctrine of court policy); *Knowles v. State Board of Education*, 219 Kan. 271, 278, 547 P.2d 699 (1976) (mootness does not deprive a court of jurisdiction to decide an issue); *State ex rel. Stephan v. Johnson*, 248 Kan. 286, 290-91, 807 P.2d 664 (1991) (prudential exceptions to mootness allow courts to hear cases which involve questions of public interest).

The weight of stare decisis is by necessity slight when the principle has failed to take root in a consensus of decision-making over a significant period. See *State v. Wetrich*, 307 Kan. 552, 562, 412 P.3d 984 (2018) (stare decisis does not exist for its own

sake, instead effects "even-handed, predictable, and consistent application of the law" [citing *Johnson v. United States*, 576 U.S. 591, 606, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015)]); *State v. Larsen*, 317 Kan. 552, 559, 533 P.3d 302 (2023) (the purpose of stare decisis is to ensure stability and continuity). There is no real "stability and continuity" here to "ensure." Instead, the "stability" we are most concerned with ensuring pre-dates any of this court's opinions on the matter. We are concerned with preserving the structural guarantees embedded in the pages of our state's Constitution.

Given these considerations, we are clearly convinced that the approach to mootness announced in *Roat* was both originally erroneous and that we have no choice under our Constitution but to overrule that precedent. The judicial power is conferred on courts by the Kansas Constitution, not by this court's precedent. To the extent our prior caselaw suggests—or explicitly states—that courts may exceed the power granted to us by the Kansas Constitution, those decisions are overruled.

"Mootness can occur when, over the course of litigation, something changes that renders any judicial decision ineffectual to impact the rights and interests of the parties before it." *Sierra Club*, 317 Kan. at 361. In other words, "'[w]hen, by reason of changed circumstances between commencement of an action and judgment on that action, a judgment would be unavailing as to the issue presented, the case is moot.'" *Roll v. Howard*, 316 Kan. 278, 284, 514 P.3d 1030 (2022); *Huber v. Schmidt*, 180 Kan. 80, 82, 299 P.2d 33 (1956). Thus, the question before us is whether Phipps' completion of his sentence renders this case moot. Such a question is best answered by the facts of each particular case.

First, considering Phipps' challenge to his sentence, we hold that because he has completed his sentence and been released from custody, any decision regarding the appropriateness of his sentence would not have an impact on his rights. See *State v. Williams*, 298 Kan. 1075, 1082-83, 319 P.3d 528 (2014) (challenge to sentence for

10

postrelease supervision did not render the appeal moot because a subsequent felony conviction may have subjected defendant to life in prison). Both the State and Phipps have argued that the primary reason Phipps' case is not moot is because the issues presented are of statewide importance and capable of repetition. Both parties generally request "guidance" from this court to define the rights of Kansans. Unlike the defendant in *Williams*, neither Phipps nor the State have identified how a decision in this case would have an impact on Phipps. Both Phipps and the State are requesting this court to issue an advisory opinion, something we are not constitutionally authorized to do. Consequently, Phipps' challenge to his sentence is moot.

We likewise hold that dismissing Phipps' challenge to his criminal history calculation would have no direct bearing on his rights in future cases. As this court discussed in *State v. Tracy*, 311 Kan. 605, 608, 466 P.3d 434 (2020):

> "State law grants a defendant the right to challenge a criminal history worksheet before sentencing. And when that happens, the burden shifts to the State to prove its accuracy by a preponderance of the evidence. K.S.A. 2019 Supp. 21-6814(c); *State v. Schow*, 287 Kan. 529, 539-40, 197 P.3d 825 (2008). Despite [defendant's] suggestion that he would be precluded from relitigating this issue in a future prosecution, our sentencing guidelines contemplate a new presentence investigation for each new sentence. K.S.A. 2019 Supp. 21-6813; *State v. Collier*, 263 Kan. 629, 634, 952 P.2d 1326 (1998)."

Thus, a mootness ruling in this case would not preclude Phipps from raising this challenge in a future case. Because we overturn *Roat* and hold that mootness is a jurisdictional doctrine, a discussion of *Counterman* must be saved for a case over which we have jurisdiction to decide such questions.

Appeal dismissed.

11

＊ ＊ ＊

BILES, J., dissenting:  The majority's reference to *Morrison v. Olson* reminded me of Justice Scalia's often-quoted refrain from it:  "Frequently an issue of this sort will come before the Court clad, so to speak, in sheep's clothing: the potential of the asserted principle to effect important change in the equilibrium of power is not immediately evident, and must be discerned by a careful and perceptive analysis. *But this wolf comes as a wolf.*" (Emphasis added.) 487 U.S. 654, 699, 108 S. Ct. 2597, 101 L. Ed. 2d 569 (1988) (Scalia, J., dissenting). Similarly, my colleagues here do not disguise what they are doing. They are ending our court's long-recognized exceptions to mootness under an excuse of promoting judicial restraint—an outcome neither party requested and our Constitution and caselaw do not compel. In the process they forge a path no other court (state or federal) has walked, while ignoring adverse consequences for ordinary Kansans. To state it plainly, under this rule, the government or any other powerful person or entity can get away with violating another's rights, so long as they act fast enough to outpace the courts. For the reasons explained, I dissent.

Until today, it has been recognized Kansas courts always have the power to decide a question presented, even when the case turns moot, if that question is capable of repetition and of public importance. See, e.g., *State v. Hilton*, 295 Kan. 845, Syl. ¶ 5, 286 P. 3d 871 (2012) ("One exception to the general rule that an appellate court will not review a moot issue is where the question is capable of repetition and is of public importance."). That possibility is now gone, even though it plays an important role in safeguarding rights. And the majority disavows it without even bothering to do a proper stare decisis analysis to explain why this court has been so wrong for so long. See, e.g., *State v. Reynolds*, 319 Kan. 1, 6-17, 552 P.3d 1 (2024) (overruling the super sufficiency test from *State v. Wright*, 290 Kan. 194, 224 P.3d 1159 [2010], and its progeny after meticulously explaining why it was wrong).

But that question goes unanswered because the majority does not even bother to consider it as the majority enshrines its preferred outcome. And I have no doubt an argument lies just below our horizon that prior cases invoking mootness exceptions are now void ab initio, so a future court can start with a clean slate to get to its preferred outcome on an issue of public importance. See *State v. Sherman*, 305 Kan. 88, Syl. ¶ 2, 378 P.3d 1060 (2016) ("Stare decisis operates to promote system-wide stability and continuity by ensuring the survival of decisions that have been previously approved by a court."). The majority upends our caselaw without even surveying the likely aftermath.

Let's start by considering what has just been lost. Long-standing caselaw of real-life public importance has resulted from this court's thoughtful election to exercise the prudential "capable-of-repetition" exception to mootness. See, e.g., *Hilton*, 295 Kan. at 851-52 (defining requirements for probation revocation and completion of sentence for convicted criminal defendants); *State v. Bennett*, 288 Kan. 86, 200 P.3d 455 (2009) (declaring warrantless search conditions created by statute for probationers unconstitutional); *Smith v. Martens*, 279 Kan. 242, 244-45, 256, 106 P.3d 28 (2005) (upholding constitutionality of Protection from Stalking Act); *Parsons v. Bruce*, 270 Kan. 839, 842, 19 P.3d 127 (2001) (resolving statutory and caselaw tensions in the calculation of conditional release dates in criminal cases); *Bd. of County Comm'rs of Johnson County v. Duffy*, 259 Kan. 500, 504-05, 912 P.2d 716 (1996) (interpreting statutory powers of state officials over statewide property tax reappraisal of agricultural property); *Kansas City Star v. Fossey*, 230 Kan. 240, 244, 630 P.2d 1176 (1981) (establishing judicial guidelines to ensure news media's First Amendment right to access to criminal suppression hearings); *Shirley v. Retail Store Emp. Union*, 225 Kan. 470, 471-72, 592 P.2d 433 (1979) (enlarging scope of court jurisdiction regarding union picketing activity covered by federal National Labor Relations Act); *Knowles v. State Bd. of Educ.*, 219 Kan. 271, 278-79, 547 P.2d 699 (1976) (allowing legal challenge to proceed after 1975 amendments to School District Equalization Act); *Smith v. Miller*, 213 Kan. 1, 5, 514 P.2d 377 (1973) (detailing students' rights under the Suspension and Expulsion of

13

Students' Act); *State ex rel. Steere v. Franklin County Farm Bureau*, 172 Kan. 179, 191-92, 239 P.2d 570 (1951) (examining legislation that "revamps the whole county farm bureau arrangement in the state"); *State v. Allen*, 107 Kan. 407, Syl., 191 P. 476 (1920) (correcting the misconception of a defendant's rights to be considered by a jury); *State ex rel. Dawson v. Bd. of Comm'rs of Haskell County*, 92 Kan. 961, 967, 142 P. 246 (1914) (addressing requirements to compel levying a tax to support local high school).

This "capable-of-repetition" exception is of particular concern because eliminating it makes it possible to violate someone's rights so long as the violation occurs within a window of time that escapes judicial review by becoming moot before a definitive ruling can be made, just to then start the violation all over again. Take, as just one example, issues surrounding abortion recognized and recently reaffirmed not only by this court but also the people of this state. See *Hodes & Nauser, MDs, P.A. v. Schmidt*, 309 Kan. 610, Syl. ¶ 8, 440 P.3d 461 (2019); *Hodes & Nauser, MDs, P.A. v. Kobach*, 318 Kan. 940, 947, 551 P.3d 379 (2024). As the United States Supreme Court once explained:

> "[W]hen, as here, pregnancy is a significant fact in the litigation, the normal 266-day human gestation period is so short that the pregnancy will come to term before the usual appellate process is complete. If that termination makes a case moot, pregnancy litigation seldom will survive much beyond the trial stage, and appellate review will be effectively denied. Our law should not be that rigid. Pregnancy often comes more than once to the same woman, and in the general population, if man is to survive, it will always be with us. Pregnancy provides a classic justification for a conclusion of nonmootness. It truly could be 'capable of repetition, yet evading review.'" *Roe v. Wade*, 410 U.S. 113, 125, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973), *overruled on other grounds Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215, 142 S. Ct. 2228, 213 L. Ed. 2d 545 (2022).

Yet, despite the obvious consequences to removing this exception from our judicial toolbox, the majority announces: "Because mootness *is a jurisdictional bar*, we hold there are no 'prudential exceptions' allowing a Kansas court to review otherwise

14

moot issues." (Emphasis added.) Slip op. at 3. But this has never been the law in Kansas before today. See, e.g., *State v. Wilson*, 319 Kan. 55, 59, 552 P.3d 1228 (2024) ("[M]ootness is a prudential doctrine in Kansas . . . ."); *State v. Roat*, 311 Kan. 581, 590, 466 P.3d 439 (2020) (concluding mootness is a prudential doctrine based on the history of Kansas caselaw); *Duffy*, 259 Kan. 500, Syl. ¶ 1 (stating mootness is a doctrine of court policy); *Bair v. Bair*, 242 Kan. 629, Syl. ¶ 1, 632, 750 P.2d 994 (1988) (generalizing that courts do not opine on moot questions); *Curry v. Perney*, 194 Kan. 722, 726, 402 P.2d 316 (1965) (reaching an issue's merits and "passing the question, which has not been raised, whether the issues have become moot"); *Moore v. Smith*, 160 Kan. 167, 170, 160 P.2d 675 (1945) ("The fact that an issue has become moot does not necessarily mean that the appellate court is without jurisdiction to determine it. The rule is one of court policy . . . ."); *Staley v. Espenlaub*, 127 Kan. 627, 274 P. 261 (1929) (making "some observations" on a legal issue raised by a moot case); *Gross v. Schaffer*, 29 Kan. 442, 1883 WL 772 (1883) (considering an appeal's subject matter even though defendants purchased the plaintiff's interest in the contested property during the appeal).

So how does the majority ignore such precedent? It starts by misinterpreting or mischaracterizing established caselaw and our Constitution while simultaneously misunderstanding mootness' basic definitional scope. Of course, this is bound to happen when tackling an esoteric concept like mootness—complicated by over a hundred years of state and federal caselaw—without first engaging in a proper stare decisis analysis. And this is exactly why we impose such stringent standards on ourselves to explain why past caselaw being overruled was incorrectly decided. See *State v. Clark*, 313 Kan. 556, 565, 486 P.3d 591 (2021) (departing from precedent requires the court be clearly convinced prior caselaw was originally erroneous or is no longer sound due to changing conditions and will bring more good than harm); see, e.g., *State v. Hambright*, 310 Kan. 408, 416, 447 P.3d 972 (2019) (disapproving of a Court of Appeals panel's departure from precedent even though "[t]he panel makes some points that would be mildly

seductive if one were to be writing on a clean slate" and noting "this court could choose to overrule its prior holding . . . albeit such a tack should not be employed simply to reach a result the current court deems more desirable").

As near as I can tell, the majority simply believes it knows better than those who came before it based on a self-perceived ideological notion of judicial constraint. Slip op. at 6-7 (theorizing that "prudential exceptions" shift executive power towards the judiciary). But the majority does not identify a single Kansas case exemplifying the supposed judicial tyranny it condemns, let alone explain how previous Kansas courts abused these prudential exceptions in some unquenched thirst for judicial autocracy.

Consider, for example, how the majority dives headfirst into its analysis by mischaracterizing decisions like *Graves v. State Bd. of Pharm.*, 188 Kan. 194, 362 P.2d 66 (1961), to claim it held "courts have no authority other than to dismiss an action that is moot." Slip. op. at 9. But what that case actually said was "*ordinarily* this court, on appeal, will not consider or decide the mooted issue." (Emphasis added.) 188 Kan. at 197. Clearly, "ordinarily" is doing the heavy lifting by acknowledging our long-standing practice of occasionally invoking a mootness exception when the circumstances required it. The majority, however, only sees what it wants to see in the caselaw—not what the decision actually says.

Still, the majority trudges on, ignoring the inconvenient truth that *Graves* and many other cases recognized established "prudential exceptions" to mootness. See, e.g., *State ex rel. Mathews v. Eastin*, 179 Kan. 555, Syl. ¶ 2, 297 P.2d 170 (1956) (The Supreme Court "ordinarily will not consider and decide the mooted issue, whether one of law or fact."); *Dickey Oil Co. v. Wakefield*, 153 Kan. 489, Syl., 111 P.2d 1113 (1941) (same). The practice of referring to "[t]he general rule on mootness," plainly acknowledges exceptions exist. See, e.g., *Bair v. Bair*, 242 Kan. 629, 632, 750 P.2d 994

16

(1988). And the majority blurs its eyes by adopting a thinly veneered separation-of-powers analysis to exploit meaningless word variations while launching its new judicial doctrine.

Let's begin with the basic mootness doctrine in Kansas, which we can all agree on: "A case is moot when the actual controversy has ended and the only judgment that could be entered would be ineffectual for any purpose and would not impact any of the parties' rights." *Sierra Club v. Stanek*, 317 Kan. 358, Syl., 529 P.3d 1271 (2023). This primary formulation was first articulated in *Ziegler v. Hyle*, 45 Kan. 226, 227, 25 P. 568 (1891), after the parties settled their dispute over the appealed issue. Clearly, when parties settle a case, the actual controversy ends because there is no longer any "disagreement or a dispute" to decide. See Black's Law Dictionary 419 (12th ed. 2024) (defining "controversy").

But there remains more to it than that because it does not necessarily "follow that once 'a case or controversy has ended, our jurisdiction ends.' See *Roat*, 311 Kan. at 604 (Stegall, J., concurring)." Slip op. at 4. This is both a logical fallacy and ignores the plain text of our Constitution. The contrapositive, which is always logically equivalent, provides: A case is not moot when there is an actual controversy *or* the judgment entered would be effective for *any* purpose *or* would impact *any* of the parties' rights. Hammack, Book of Proof 129 (3d ed. 2018) ("Since $P \Rightarrow Q$ is logically equivalent to $\sim Q \Rightarrow \sim P$, it follows that to prove $P \Rightarrow Q$, it suffices to instead prove that $\sim Q \Rightarrow \sim P$ is true."). So, even if the majority were correct that mootness is jurisdictional, this court would maintain the ability to address questions in which its judgment could serve any beneficial purpose or affect any of the parties' rights. Perhaps the majority would prefer that past courts simply refer to such cases as not moot with the exceptions articulating specific scenarios, instead of "allow[ing] for 'prudential' exceptions for 'otherwise moot' cases." Slip op. at 5.

Even using that language though, the majority's conclusion that mootness is a jurisdictional issue ignores the Kansas Constitution's plain text. "To be faithful to our constitutional text requires that we give effect to the actual words the Constitution employs." See *State v. Younger*, 320 Kan. 98, 145, 564 P.3d 744 (2025) (Stegall, J., concurring).

In Kansas, "[s]ubject-matter jurisdiction is extended to courts by the Kansas Constitution itself." *Nicholson v. Mercer*, 319 Kan. 712, 715-16, 559 P.3d 350 (2024). Article 3 establishes that, beyond its specific provisions, the Legislature shall define the jurisdiction of trial and appellate courts. Kan. Const. art. 3, § 3 ("The supreme court shall have . . . such appellate jurisdiction as may be provided by law."), § 6(b) ("The district courts shall have such jurisdiction in their respective districts as may be provided by law."). Appellate jurisdiction is a statutory matter. *Bd. of County Comm'rs of Sedgwick County v. City of Park City*, 293 Kan. 107, Syl. ¶ 1, 260 P.3d 387 (2011) ("The right to appeal is entirely statutory and not a right vested in . . . the Kansas Constitution.").

The Legislature, in turn, has granted our courts broad jurisdiction. K.S.A. 20-301; Latta, *Getting to the Merits*, 88 J.K.B.A. 32, 33 (2019) ("For Kansas district courts, subject matter jurisdiction is usually quite simple. They have it."). It declares the district courts "shall have general original jurisdiction of *all matters*, both civil and criminal, unless otherwise provided by law." (Emphasis added.) K.S.A. 20-301; see also Black's Law Dictionary 1016 (12th ed. 2024) (defining general jurisdiction as "[a] court's authority to hear a wide range of cases, civil or criminal, that arise within its geographic area").

The statutes also define the basis for appellate jurisdiction. Subject to appellate procedure statutes and rules, the Court of Appeals and this court have the same subject matter jurisdiction as the district courts. See K.S.A. 60-2101(a), (b) (providing the Court of Appeals and Supreme Court "shall have jurisdiction to correct, modify, vacate or

reverse any act, order or judgment of a district court" subject to appellate procedure statutes and rules); *Friedman v. Kan. State Bd. of Healing Arts*, 287 Kan. 749, 752, 199 P.3d 781 (2009) (explaining an appellate court lacks subject matter jurisdiction over a ruling the district court lacked jurisdiction to make in the first place); *Thompson v. Amis*, 208 Kan. 658, 661, 493 P.2d 1259 (1972). Had the majority followed our Constitution's explicit text, it would have examined whether we have jurisdiction based on whether Phipps' case is a "matter" under K.S.A. 20-301 and concluded we do. See *State v. James*, 301 Kan. 898, 903, 349 P.3d 457 (2015) ("The language of a statute is our primary consideration in ascertaining the intent of the legislature. Where such language is plain and unambiguous, it is typically determinative of legislative intent.").

The plain and ordinary meaning of "matter" is a "subject under consideration," especially involving a dispute, litigation, or case, with a "case" defined as "[a] civil or criminal proceeding, action, suit, or controversy at law or in equity." Black's Law Dictionary 266, 1168 (12th ed. 2024). As used in K.S.A. 20-301, a "matter" includes standing as an issue of whether a party has the right to bring an action. See *Gannon v. State*, 298 Kan. 1107, 1121, 319 P.3d 1196 (2014). But it is irrelevant whether the dispute is still considered a "real live controversy" as we must do when considering mootness. Compare Black's Law Dictionary 1205 (12th ed. 2024) (providing the mootness doctrine asks "if the question has been resolved and has therefore passed the point of being a live controversy"), with *Sierra Club v. Moser*, 298 Kan. 22, 33, 310 P.3d 360 (2013) (explaining standing requires a cognizable injury that is causally connected to the challenged conduct). It seems reasonable to simply accept that the case before us today qualifies as a "matter"—Phipps had the right to appeal his criminal conviction and sentencing, which the State opposes.

This approach to considering the constitutional contours of Kansas courts' jurisdiction is not novel. See, e.g., *In re Williams*, 307 Kan. 960, 967-68, 417 P.3d 1033 (2018) ("Sources of Kansas courts' subject-matter jurisdiction include the Kansas

19

Constitution and Kansas statutes. Kansas district courts are generally described as courts of general jurisdiction, which means they have subject matter jurisdiction over 'all matters, both civil and criminal, unless otherwise provided by law.' [Citations omitted.]"); *Gleason v. Samaritan Home*, 260 Kan. 970, 983, 926 P.2d 1349 (1996) (quoting *Vaughn v. Nadel*, 228 Kan. 469, 479, 483, 618 P.2d 778 [1980] [construing article 3, sections 3 and 6[b] of the Kansas Constitution to give the Legislature full authority to establish district court's jurisdiction over administrative appeals]); *Citizens Building & Loan Ass'n v. Knox*, 146 Kan. 734, 746, 74 P.2d 161 (1937) (examining the applicable statutes after determining the Constitution's provision that probate jurisdiction "may be prescribed by law" authorizes "our Legislature to fix the jurisdiction of probate courts").

But instead of doing that, the majority abruptly turns to federal constitutional law to explain our state Constitution without either party supporting its preferred conclusion, even though this court, not any federal court, is the final authority on the Kansas Constitution's meaning. See slip op. at 6 ("The Kansas constitution, not our federal Constitution, determines the limit on our judicial power. And it is Kansas law, not federal law, that determines the existence of a case or controversy."); *Gannon*, 298 Kan. at 1140. In doing so, the majority essentially "allow[s] the federal courts to interpret the Kansas Constitution" despite crucial differences between our Constitution and the federal one. *State v. Lawson*, 296 Kan. 1084, 1091-92, 297 P.3d 1164 (2013).

To start, the United States Constitution defines federal court jurisdiction differently from the Kansas Constitution. As discussed, our state Constitution explicitly grants power to the Legislature to define this courts' jurisdiction, and the Legislature has given our courts general jurisdiction. Kan. Const. art. 3, § 6(b) ("The district courts shall have such jurisdiction . . . as may be provided by law."); K.S.A. 20-301 (providing the district courts "shall have general original jurisdiction of all matters, both civil and criminal"). Meanwhile, Article III, Section 2 of the federal Constitution is different. It

20

explicitly requires a case or controversy, envisioning the federal courts as ones of limited jurisdiction:

> "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made . . . to Controversies between two or more States;—between a State and Citizens of another State,—between Citizens of different States,—between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects." U.S. Const. art. III. § 2.

See also 16 Am. Jur. 2d, Constitutional Law § 140.

This difference is essential because "[w]hen jurisdiction is limited by the constitution, it makes some sense to decide cases of doubt against the litigant. [But w]hen it is granted generally, a state court need only be concerned that it not exceed the limits of the judicial power." Friesen, et al., 1 State Constitutional Law § 7.09[2] (2015). And we have recognized this principle before, in the context of standing, in which we maintained our own test, despite having occasionally cited to the federal constitutional standard. See *Kan. Building Indus. Workers Comp. Fund v. State*, 302 Kan. 656, 679-80, 359 P.3d 33 (2015). There, the court explained:

> "[A]s opposed to the United States Constitution, our State Constitution contains no case or controversy provision. The Kansas Constitution grants 'judicial power' exclusively to the courts. And Kansas courts have repeatedly recognized that 'judicial power' is the '"power to hear, consider and determine controversies between rival litigants."' Given the differences in the genesis of the two systems, we do not feel compelled to abandon our traditional two-part analysis as the definitive test for standing in our state courts. [Citations omitted.]" *Kan. Building Indus. Workers*, 302 Kan. at 680.

This brings us to my next point. Unlike the explicit case-or-controversy requirement in the United States Constitution, the Kansas case-or-controversy requirement arises only as a judicially implied doctrine based on the separation of powers "embodied" in our Constitution's framework. *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 896, 179 P.3d 366 (2008). This is where the majority makes another slip. It reasons the almost identical separation of powers doctrine in the Kansas and United States Constitutions means our case-or-controversy requirement likewise must restrict this court's jurisdiction. But this conclusion does not follow from that.

Indeed, when it comes to the doctrine of separation of powers, our Constitution is "almost identical" to the federal Constitution. *Solomon v. State*, 303 Kan. 512, 525, 364 P.3d 536 (2015). But the separation of powers doctrine is a principle of guiding allocation of governmental functions, rather than imposing a jurisdictional rule affecting the authority of courts. See *Morrison*, 285 Kan. at 883-84 ("[T]he separation of powers is not pure" and requires determining if "there is a significant interference by one branch of government with the operations of another branch."). This court employs a pragmatic, flexible, and practical approach to maintaining the separation of powers because it "'has never existed in pure form except in political theory.' In reality, there is an overlap and blending of functions, resulting in complementary activity by the different branches that makes absolute separation of powers impossible. [Citations omitted.]" *Morrison*, 285 Kan. at 883; *State ex rel. Stephan v. Kan. House of Representatives*, 236 Kan. 45, 59, 687 P.2d 622 (1984).

The natural conclusion, then, is that our case-or-controversy requirement, arising under the separation of powers doctrine, inherently requires a prudential question allowing flexibility, not one of jurisdictional strictness. See, e.g., *In re L.L.*, 315 Kan. 386, Syl. ¶ 1, 508 P.3d 1278 (2022) ("Standing is both a requirement for case-or-controversy and a component of subject matter jurisdiction that may be raised at any

22

time."). This means that questions of mootness, an issue under our case-or-controversy requirement, must follow this flexible approach. Our precedent in *Roat*, 311 Kan. 581, reached that same conclusion. And professing to follow federal constitutional law regardless of these differences essentially "allow[s] the federal courts to interpret the Kansas Constitution" contrary to our state sovereignty. *Lawson*, 296 Kan. at 1092.

This does not, however, violate the separation of powers by usurping the executive branch's power of giving advisory opinions as the majority insists because there is a fundamental difference between giving advisory opinions and deciding a moot case based on a longstanding prudential exception. In Kansas, the advisory opinion power expressly belongs to the Attorney General. See K.S.A. 75-704 (allowing Attorney General to provide advisory opinion). The statute empowering the Attorney General to give advisory opinions says as much—"The attorney general shall . . . give his or her opinion in writing, without fee, upon all questions of law submitted to him or her *by the legislature, or either branch thereof*, or by the governor, secretary of state, state treasurer, state board of education, or commissioner of insurance." (Emphasis added.) K.S.A. 75-704. But that is not what is at play when a legal controversy before the court is capable of repetition and concerns a matter of public importance.

To be sure, some other definitions can present the type of abstract, sterile legal questions that Justice Frankfurter notoriously referred to as "ghosts that slay." Frankfurter, *Note on Advisory Opinions*, 37 Harv. L. Rev. 1002, 1008 (1924); Garner, et al., The Law of Judicial Precedent 269 (2016) ("'[j]udicial declaration, unaccompanied by judicial application'"); Black's Law Dictionary 1314 (12th ed. 2024) ("nonbinding statement by a court of its interpretation of the law on a matter submitted for that purpose"). And the majority is not alone in its mistaken use of "advisory opinion," as the term is often used trivially to express a court's refusal to address issues of standing, ripeness, and mootness as some scholars have noted. See 13 Wright & Miller, Federal

23

Practice and Procedure § 3529.1 (3d ed. 2008). But that does not excuse the majority's failure to account for the differences between the meaning of the mootness doctrine and the multitude of other uses for the word "moot" in the judicial context.

Moot can mean "[h]aving no practical significance; hypothetical or academic." Black's Law Dictionary 1205 (12th ed. 2024); see, e.g., *Mo. Pac. Ry. Co. v. State*, 60 Kan. 858, 56 P. 755 (1899) (answering a "mere moot question" or "abstract question[] of law" when there is "nothing of a substantial nature left for decision" is an unwarranted use of the court's time). A "moot case" can also mean a case that "presents only an abstract question that does not arise from existing facts or rights." Black's Law Dictionary 1205 (12th ed. 2024); see, e.g., *Stebbins v. Western Union Telegraph Co.*, 69 Kan. 845, 845, 76 P. 1130 (1904) (determining a case's statutory basis becoming void "settles the real controversy"). Meanwhile, a moot point is "open to argument; a debatable question," as well as an "issue that need not be decided because it is no longer critical to the main issue at hand." Black's Law Dictionary 1205 (12th ed. 2024); see, e.g., *State ex rel. Fatzer v. Mills*, 171 Kan. 397, 402, 233 P.2d 720 (1951) (having "held that section 24-126 is not applicable" the plaintiff's argument that section 21-126 conflicts with section 24-105 is moot).

These varied definitions indicate mootness' meaning cannot be determined by simply doing a computer search to find the word "moot" in a decision. We must consider the word in its context. Scalia & Garner, Reading Law 70 (2012) ("Many words have more than one ordinary meaning. The fact is that the more common the term [e.g., *run*], the more meanings it will bear. . . . Yet context disambiguates . . . .").

The mootness *doctrine* in Kansas requires a case to meet the minimum standard of continuing life necessary under the case-or-controversy requirement when the judgment could be effective *for any purpose* or impact *any* of the parties' rights. *Roat*, 311 Kan. at 592; 13B Wright & Miller § 3533. This type of case is much more like a permissible test

case, which does not violate the rule against advisory opinions because it has sufficient factual grounding and truly adverse parties. *Morrison*, 285 Kan. at 910 (explaining that a test case is permissible because there is an actual controversy, which "does not make the action 'fictious'"); *State v. Dolley*, 82 Kan. 533, 108 P. 846 (1910) (determining the court has jurisdiction to consider a test case); Garner, The Law of Judicial Precedent at 139-40. Similarly, the prudential grounds for considering an otherwise moot case ensure adverse parties have an interest in obtaining a judgment from this court. See, e.g., *Roat*, 311 Kan. at 590 ("issues that are capable of repetition and present concerns of public importance"); *Mundy v. State*, 307 Kan. 280, 288, 408 P.3d 965 (2018) (collateral consequences to a conviction); *State v. Montgomery*, 295 Kan. 837, Syl. ¶ 4, 286 P.3d 866 (2012) (future adverse legal consequences). Issues that become moot are far from mere abstract or sterile legal questions.

Instead of engaging in this type of careful analysis, the majority would rather follow the line of occasional cases that distort our mootness doctrine. See, e.g., *State ex rel. County Atty. of Reno County v. Smith*, 140 Kan. 461, 36 P.2d 956 (1934) (quoting 1 C.J. 973) (relying on another state's interpretation of its constitution without explaining why it extends to Kansas); *Row v. Artz*, 168 Kan. 71, 73, 211 P.2d 66 (1949) (misapplying the holding in *Dickey*, 153 Kan. 489, Syl., that courts do not ordinarily consider moot questions to conclude it cannot answer a moot question as any resulting judgment would be unenforceable); *Ellis v. Landis*, 118 Kan. 502, 502, 235 P. 851 (1925) (misconstruing *Meyn v. Kansas City*, 91 Kan. 29, 30, 136 P. 898 [1913], which held "'appeals are not heard for the determination of matters of cost only'" as support for its proposition that answering a moot question does not amount to a judicial decision).

Perhaps, the furthest deviation from the Kansas mootness doctrine materializes in *Nat'l Educ. Ass'n of Topeka, Inc. v. U.S.D. 501*, 227 Kan. 529, 608 P.2d 920 (1980), when the court stated:

25

"Appellate review is dependent upon the existence of an actual case or controversy (*Thompson v. Kansas City Power & Light Co*., 208 Kan. 869, 871, 494 P.2d 1092 (1972)), and none is present in a moot case. This court is not statutorily empowered to render advisory opinions. *Knowles v. State Board of Education*, 219 Kan. 271, 278, 547 P.2d 699 (1976); *Thompson v. Kansas City Power & Light Co*., 208 Kan. 869, 494 P.2d 1092. We also find the court is without constitutional authority to render advisory opinions. Such an opinion would go beyond the limits of determining an actual case or controversy and would violate the doctrine of separation of powers. 16 C.J.S. Constitutional Law s 150." *N.E.A.*, 227 Kan. at 531-32.

Each statement stretches its respective authority past the breaking point. *Thompson*, for example, never uses the phrase "case or controversy." It merely states that courts decide actual controversies, especially as the declaratory judgment statute specifically uses that language. *Thompson*, 208 Kan. at 871; see K.S.A. 60-1701 (Weeks) ("In cases of actual controversy, courts of record within the scope of their respective jurisdictions shall have power to make binding adjudications of right . . . ."). The next sentence both wrongly equates deciding a moot question with issuing an advisory opinion and lacks support from both *Thompson* and *Knowles*. See *Thompson*, 208 Kan. at 873 ("It has never been the policy of this court to write advisory opinions."). In fact, *Knowles* directly contradicts *N.E.A.* by stating that mootness "does not necessarily mean that an appellate court is without jurisdiction to consider the issue on appeal. The rule as to moot questions is one of court policy." 219 Kan. at 278. And recall that *Knowles* specifically addressed the legal issue at hand, noting the likelihood the issue would repeat itself in the context of public school finance. 219 Kan. at 278-79. Finally, the reference to 16 C.J.S. Constitutional Law § 150 (1956), in *N.E.A.* is blatantly inapplicable; it defines an advisory opinion—without any reference to mootness—as "one rendered by a court or judges in response to a request from some other department or officer."

But despite its questionable precedential value, *N.E.A.* becomes the basis for implying a case-or-controversy requirement in our Constitution and determining any violation is a separation of powers issue. See *State ex rel. Morrison*, 285 Kan. at 888. And this shaky ground is what the majority builds its decision on today.

The actual, harsh reality of the majority's claimed separation-of-powers issue is that no branch will have power to decide this dispute. And by declining to hear this case and all other moot cases, this court inevitably cedes some of its constitutional powers. The courts are supposed to be "the bulwarks of a limited Constitution against legislative encroachments" and provide a "barrier to the encroachments and oppressions of the representative body." The Federalist No. 78 (Alexander Hamilton). The majority steps back from that mission.

Under today's ruling, the Legislature may pass laws that infringe upon Kansans' rights without any check or balance as long as that infringement is short enough in duration to be made moot by the time an appeal reaches this court. Similarly, the executive branch will be able to nimbly avoid the courts, leaving citizens with no recourse. And this, of course, means the court will fail its duty "to declare all acts contrary to the manifest tenor of the Constitution void" and "the reservations of particular rights or privileges [will] amount to nothing." The Federalist No. 78 (Alexander Hamilton); see also Scalia, Opening Statement to the Senate Judiciary Committee: Role of Judges Under U.S. Constitution (October 5, 2011) (stating federal government's structure, including an independent judiciary, prevents the federal Bill of Rights from becoming "'a parchment guarantee'" like those guaranteed by the Soviet Union's constitution). In one breath the majority says it is concerned with preserving the structural guarantees embedded in the pages of our state's Constitution, and in the next it eviscerates those protections. See slip op. at 9-10.

Without grappling with any of this, the majority casually abandons our precedent, in an act that destabilizes our precedent and in the process demonstrates a bend towards judicial activism. Compare Coney Barrett, *Precedent and Jurisprudential Disagreement*, 91 Tex. L. Rev. 1711, 1721-22 (2013) ("Absent a presumption in favor of keeping precedent, . . . new majorities could brush away a prior decision without explanation. If only the votes mattered . . . a reversal would represent an abrupt act of will more akin to a decision made by one of the political branches."), with slip op. at 10 (claiming there is no real "'stability and continuity' here to 'ensure'" justifying less deference to stare decisis). If a justice does not agree with the majority when an issue first arises, they need only wait for the right opportunity to overturn that precedent citing themselves as authority. But see *Hodes*, 318 Kan. at 1046 (Wilson, J., concurring) ("[A] judge's primary obligation is to protect the rule of law. One aspect of this is maintaining the stability and predictability of our legal system. Kansans deserve to know that laws . . . will not simply be cast aside when new personalities join this court.").

ROSEN, J., joins the foregoing dissenting opinion.

* * *

STANDRIDGE, J., dissenting:  The majority today departs from our long-standing precedent by treating mootness as a rigid, bright-line test, rather than the flexible, nuanced doctrine it has always been. By contrast, my dissenting colleagues argue for a new approach to our justiciability analysis that reinterprets the Kansas Constitution's grant of judicial power and looks to statutory guidance for jurisdictional limits; this approach effectively abandons established precedent by reverting to a discretionary prudential model of justiciability. Respectfully, I propose a different path that preserves both the jurisdictional anchor for mootness and the inherent flexibility of this doctrine as historically applied in Kansas.

28

The majority's assertion that the Kansas Constitution demands we adopt a rigid mootness test as a jurisdictional requirement is not supported by the text or related statutes. Article III of the Kansas Constitution vests all judicial power exclusively in the courts and provides that district and appellate court jurisdiction shall be determined by law. Kan. Const. art. 3, §§ 1, 3, 6(b). To that end, the Legislature has granted broad subject matter jurisdiction to Kansas courts. K.S.A. 20-301 (Courts "shall have general original jurisdiction of all matters, both civil and criminal, unless otherwise provided by law, and also shall have such appellate jurisdiction as prescribed by law."). Nothing in this constitutional or statutory language suggests that judicial power ceases to exist solely because the immediate effects of a dispute on the parties have subsided.

The majority's contention that a finding of mootness categorically extinguishes judicial power under the Kansas Constitution rests solely on the implied case-or-controversy requirement derived from the separation of powers doctrine. See slip op. at 4-6. But in *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 179 P.3d 366 (2008), a key case upon which the majority relies, this court explained that separation of powers does not exist "'in pure form except in political theory'" and, in reality, requires a "'pragmatic, flexible and practical approach'" to facilitate the complimentary and even overlapping activity of the three different branches of government. 285 Kan. at 883. Thus, judicial doctrines, including mootness, must be understood through that flexible, functional lens—not as immutable rules but as nuanced principles informed by real-world governmental operation.

Rather than a bright-line test that cuts off jurisdiction the moment a dispute ceases to affect the parties in an immediate way, I would hold that the mootness doctrine keeps a case or controversy alive—thereby maintaining jurisdiction—when a decision on the merits could still serve a legitimate purpose, particularly when an unresolved question is capable of repetition and is of public importance or could result in continuing injuries or collateral consequences affecting a party's legal rights or interests. The fact that recent

29

caselaw has characterized mootness as a jurisdictional requirement does not justify eliminating these historically recognized prudential exceptions from the doctrine. Mootness is not a simple switch that turns judicial power on or off. Treating it as such would curtail state court jurisdiction to an extent that falls short of our constitutional duty.

This court's early concept of general jurisdiction extended to all "matters" an adjudicative body would traditionally decide. See *Gille v. Emmons*, 58 Kan. 118, 120, 48 P. 569 (1897) ("A court cannot determine matters not brought to its attention by some method known to the law, nor give effective judgment upon a cause or subject-matter not brought within the scope of its judicial power."). Later on, this court described judicial power as being limited to adjudicate controversies between rival litigants and subject to other restraints on the exercise of that power in certain situations. See *Morrison*, 285 Kan. at 896 (discussing Kansas courts' recognition of a case-or-controversy requirement to invoke judicial power); *State v. Stubbs*, No. 125,003, 320 Kan. ___, slip op. at 31-33 (Standridge, J., dissenting) (discussing early adoption of prudential standing rules); *State v. Roat*, 311 Kan. 581, 584-85, 466 P.3d 439 (2020) (discussing early adoption of prudential mootness doctrine). These contours formed the basis for a case-or-controversy requirement and prudential doctrines, including mootness. This more recent hybrid view—discretion within structure—acknowledges the constitutional boundary but allows judicial judgment to operate within it. In essence, it respects the structural limit on judicial power while recognizing that the Kansas Constitution does not demand strict, mechanical dismissal based on presumptive mootness.

In his dissent, Justice Biles lays out a compelling case for this court returning to a broad concept of general jurisdiction and reverting to prudential justiciability doctrines. See slip op. at 18-20, 22 (opining that our case-or-controversy requirement "inherently requires a prudential question allowing flexibility, not one of jurisdictional strictness"). But I am not convinced such a drastic move is warranted given our recent precedent, or necessary to decide this particular case. Even after recognizing a case-or-controversy

30

requirement as a limit on judicial power, this court continued to apply prudential doctrines to restrain the exercise of that power, with appropriate exceptions. See *Morrison*, 285 Kan. at 896 (tracing Kansas courts' recognition of a case-or-controversy requirement to invoke judicial power); *Stubbs*, slip op. at 31-32 (Standridge, J., dissenting) (discussing prudential standing rules); *Roat*, 311 Kan. at 584-85 (discussing prudential mootness doctrine). My position is that our current interpretation of the constitutional limits on judicial power permits application of the mootness doctrine as a flexible tool, just like when it was considered a prudential doctrine.

With respect to mootness specifically, the overwhelming weight of our precedent has held that a case can remain justiciable—and thus within the scope of judicial power—even after an intervening event has nullified the immediate dispute. See, e.g., *Gross v. Schaffer*, 29 Kan. 442, 1883 WL 772 (1883); *Staley v. Espenlaub*, 127 Kan. 627, 274 P. 261 (1929); *Moore v. Smith*, 160 Kan. 167, 170, 160 P.2d 675 (1945); *Knowles v. State Bd. of Ed.*, 219 Kan. 271, 278, 547 P.2d 699 (1976); *State ex rel. Stephan v. Johnson*, 248 Kan. 286, 290-91, 807 P.2d 664 (1991); *Allenbrand v. Zubin Darius Contractor*, 253 Kan. 315, 317, 855 P.2d 926 (1993); *Board of Johnson County Comm'rs v. Duffy*, 259 Kan. 500, 504, 912 P.2d 716 (1996); *Smith v. Martens*, 279 Kan. 242, Syl. ¶ 1, 106 P.3d 28 (2005); *State v. Bennett*, 288 Kan. 86, 89, 200 P.3d 455 (2009); *State v. Hilton*, 295 Kan. 845, 849, 286 P.3d 871 (2012); *State v. Williams*, 298 Kan. 1075, 1082, 319 P.3d 528 (2014); *State v. Hollister*, 300 Kan. 458, 467, 329 P.3d 1220 (2014); *Mundy v. State*, 307 Kan. 280, 288, 408 P.3d 965 (2018); *Roat*, 311 Kan. at 587; *State v. Wilson*, 319 Kan. 55, 59, 552 P.3d 1228 (2024).

Indeed, this court's consistent expression of the mootness doctrine provides for inherent flexibility: "[a] case is moot when the actual controversy has ended and the only judgment that could be entered would be ineffectual *for any purpose* and would not impact *any of the parties' rights*." (Emphases added.) *Sierra Club v. Stanek*, 317 Kan. 358, Syl., 529 P.3d 1271 (2023). Observing this nuance, the *Roat* majority put it well: "A

determination of mootness must therefore necessarily include analysis of whether an appellate judgment on the merits would have meaningful consequences for any purpose, including future implications." 311 Kan. at 592-93.

However, the *Roat* majority also held that this flexibility necessarily means the mootness doctrine is solely a prudential consideration, not jurisdictional. See 311 Kan. at 590. My dissenting colleagues largely agree with this position. But given our other precedent which has explicitly held mootness *is* a jurisdictional requirement, I cannot join them. See *Morrison*, 285 Kan. at 896-97 (listing jurisdictional components to satisfy the implied constitutional case-or-controversy requirement, including that issues cannot be moot); *Solomon v. State*, 303 Kan. 512, 521, 364 P.3d 536 (2015) (same); *Gannon v. State*, 298 Kan. 1107, 1119, 319 P.3d 1196 (2014) (same); *State v. Cheever*, 306 Kan. 760, 786, 402 P.3d 1126 (same), *cert. denied* 583 U.S. 1041 (2017); *Creecy v. Kansas Dep't of Revenue*, 310 Kan. 454, 460, 447 P.3d 959 (2019) (same).

I readily acknowledge this precedent is not without its problems, which the majority does not address. For instance, *Morrison* declared mootness a jurisdictional requirement without considering its doctrinal underpinnings, without attempting to reconcile our prior mootness decisions, and without even articulating the doctrine fully or explaining how it should be applied. See 285 Kan. 875, Syl. ¶ 15, 896. Nonetheless, since *Morrison*, this court has generally behaved as though it controls on the question of our jurisdictional requirements. Thus, unlike my dissenting colleagues, I do not urge that we uphold *Roat* which implicitly overruled *Morrison*. See *Roat*, 311 Kan. at 587. But I also do not accept *Morrison* as complete or infallible, only controlling for now. Even so, it does not follow from this precedent that mootness is a rigid, bright-line test as the majority insists.

Rather, I interpret the mootness doctrine relative to our precedent as permitting a matter to be kept alive, within our jurisdictional parameters, in limited scenarios when the

32

matter presents an unresolved issue that (1) is capable of repetition and is of public importance or (2) could result in continuing injuries or collateral consequences affecting a party's legal rights or interests. See *Hilton*, 295 Kan. 845, Syl. ¶ 5 ("One exception to the general rule that an appellate court will not review a moot issue is where the question is capable of repetition and is of public importance."); *Roat*, 311 Kan. at 592 ("The possibility of consequences collateral to the imposition of the sentence may suffice to justify review on the merits."); see also *United States v. Juvenile Male*, 564 U.S. 932, 935-36, 131 S. Ct. 2860, 180 L. Ed. 2d 811 (2011) ("In criminal cases, this requirement means that a defendant wishing to continue his appeals after the expiration of his sentence must suffer some 'continuing injury' or 'collateral consequence' sufficient to satisfy Article III."). This approach does not authorize courts to issue advisory opinions or expand judicial authority beyond constitutional bounds. Rather, it preserves a narrow and constitutionally grounded avenue for judicial review when necessary to carry out the court's core function:  declaring and applying the law in cases that retain legal and practical significance.

Therefore, I would adopt a legal framework similar to that set forth in *Roat* requiring the party alleging mootness to establish a prima facie showing of mootness, which forms a rebuttable presumption of the same. The burden would then shift to the party opposing the mootness challenge to show that one of the above scenarios exists to keep the case or controversy alive. Cf. *Roat*, 311 Kan. at 593. Applying this framework to the present case, I would find we retain continuing jurisdiction over Phipps' case and then I would move on to determine whether any of the above conditions exist that warrant review. If an issue satisfies one of these criteria, I would consider the merits; if not, I would dismiss the case as moot.

Notably, my dissent here reflects the same concept of judicial power and restraint that I articulated in *Stubbs*, slip op. at 30-55 (Standridge, J., dissenting), though there are important distinctions between standing and mootness which warrant different analyses.

There, I recognized that Kansas courts have broad judicial power to decide cases that fall within our jurisdiction and acknowledged that this court has derived an implied case-or-controversy requirement from the separation of powers principle inherent in our constitutional framework. *Stubbs*, slip op. at 31-32, 35-36 (Standridge, J., dissenting). And, in the context of standing, I explained how our precedent has evolved to include both constitutional jurisdictional requirements and discretionary prudential restraints. *Stubbs*, slip op. at 37-42 (Standridge, J., dissenting).

Similarly here, there is a core constitutional requirement that a case or controversy not be moot for judicial power to be invoked. But that determination has always involved consideration of the intervening circumstances triggering the question of mootness and the remaining effects of any judgment. This flexibility was formerly provided by prudential exceptions. Yet I take *Morrison* and subsequent decisions at face value that the *full* mootness doctrine—as historically applied by Kansas courts—is now jurisdictional, complete with the inherent flexibility and nuance that prevents a case from being dismissed on mootness grounds when a decision on the merits can still serve a legitimate purpose, as detailed above.